*Barnett & Brown, John Roberts, for appellee.*

---

## JOHN V. GRIGSBY *v.* L. B. GRIGSBY.

[Abstract Kentucky Law Reporter, Vol. 1—62.
Reported in full, 8 Ky. L. 131.]

**Creation of a Trust.**

> Where a purchaser buys his brother's interest in property sold in bankruptcy such a purchase, in the absence of any agreement between the brothers, will not create a trust in favor of the bankrupt; nor will a letter written some years thereafter by the purchaser to his brother, stating that "I wrote you long ago that I bought your interest in everything in Kentucky and Louisiana at the sale in bankruptcy for $100, and, if there was anything made out of it you should have the benefit of it" impress such property with a trust at the time of the purchase or when the conveyance was made.

**Gratuitous Promise not a Trust.**

> A mere declaration of an intention to give will not create an enforcible trust, even though the declaration be made by a brother.

APPEAL FROM CLARK COURT OF COMMON PLEAS.

May 27, 1880.

OPINION BY JUDGE PRYOR:

In the opinion of the chancellor the judgment for the appellee is made to rest alone on the idea that a trust had been created or declared in favor of the appellant by the letter written many years prior to the filing of the appellee's answer and cross-petition.   That the appellant, John V. Grigsby, had purchased the interests of the appellee in his father's estate as well as his interests in other property at the sale by the assignee in bankruptcy is conceded, and in no pleading filed by the appellee is it alleged, directly or inferentially, that the purchase was made for the appellee or that any agreement existed between the two that the purchase should be made for the appellee's benefit.   It is, however, alleged that subsequent to appellant's purchase the latter for a valuable or legal consideration agreed to give, or rather did give, to the appellee all the interests he had

purchased at the bankrupt sale; and that this agreement was based on the consideration that the appellee would remain in Kentucky and return to Winchester, his former home. An amended answer was also filed in which it is alleged in plain terms that the appellant agreed to surrender his interest purchased at the sale of the assignee in bankruptcy on the condition that the appellee would remove from New York to Kentucky and resume the practice of the law in Winchester. A performance of the contract on the part of the appellee is alleged and a noncompliance on the part of appellant. The chancellor finds that the contract as set forth is not established by the proof, and in this view of the case we concur.

The two brothers make conflicting statements in regard to these promises on the part of the appellant, and leave the case as if no proof had been taken on the issues made. The appellee, during the progress of the case, introduced in evidence a letter written to him by the appellant in April, 1872, in which he, appellant, says: "I wrote you long ago that I bought your interest in everything in Kentucky and Louisiana at the sale in bankruptcy for $100, and if there was anything made out of it you should have the benefit of it." It is not contended that the property was impressed with a trust at the time it was purchased or when the conveyance was made, but that the appellant has created a trust by announcing his intention to permit his brother to have the benefit of his purchase. This letter might be persuasive evidence of an agreement to purchase for the appellee; but, when this fact is not alleged, and the whole case made to rest on a promise to give upon certain considerations stated to have existed, it is difficult to see how a trust is to be established when no such claim is asserted by the appellee.

Regardless, however, of this view of the question, we cannot assent to the proposition that a declaration of an intention to give creates such a trust as will be enforced, or such a contract as will enable the chancellor to say that the promise should be enforced. The promise to give in this case is purely voluntary, and with a view of aiding a brother in pecuniary trouble. The gift never was perfected, and the proof shows that when a demand was made of the appellant to the effect that he should convey the property, he made a partial conveyance, or rather a conveyance of a part of the property purchased by reason of his gratuitous promise, and declined to convey the interest in his father's estate for the reason, as is alleged and to some extent established, that he had made advance-

ments in money to the appellee equal in value to the interest claimed. This court, in the case of *Buford's Heirs v. McKee*, 1 Dana 107, in discussing the doctrine applicable to the question involved here, says: "The whole foundation of the principle which turns mere gratuitous engagements, and voluntary promises of bounty and munificence, into contracts of obligatory efficacy, is of such doubtful equity, that we feel no disposition to carry it farther than it has already gone."

In this case the equity asserted by the appellee does not strike the mind of the chancellor so as to control his action in the case, when he considers the liberal advancements made him by his brother during the existence of his pecuniary troubles. The doctrine announced by this court in cases involving the principle on which this judgment was rendered is adverse to maintaining or enforcing mere voluntary agreements between collateral kindred, and in no case in this court has this doctrine been recognized.

To determine a trust in this case would be to enforce a voluntary agreement, a mere gratuitous promise by one brother that he would aid the other by giving him property to which the donor at the time had a complete and perfect title.

In the case of *Buford's Heirs v. McKee* the covenant was to give land to his nephew. Where there is a mere intention, says Perry, and the donor contemplated some further act to be done by him to give it effect, the trust is not completed, and if voluntary cannot be enforced (Perry, 96-97-99). But, as before stated, it is nowhere alleged that a trust was created or declared, and the right of recovery is made to depend alone upon the contract as alleged.

The inconsiderable sum paid for the property, together with the declaration of an intention that the brother should have the benefit of the purchase, would go far toward showing that the purchase was made in the first place by appellant as his brother's agent and for his benefit; but the argument made by counsel on this ground cannot be maintained, as no such claim is presented by the pleadings. As we understand, the issue here is as to the interest of appellee in his father's estate only, and with a proper pleading seeking a recovery on the idea of a trust the appellant might have interposed a defense other than the mere denial of the existence of the contracts alleged to have been made between the parties.

The judgment below is *reversed* and cause remanded for further proceedings not inconsistent with this opinion.

*Chas. Eginton, B. J. Peters, W. P. D. Bush, for appellant.*

*William Lindsay, for appellee.*